Robert A. McAULIFFE,
Plaintiff-Appellee,

v.

Adolf G. CARLSON, Commissioner of
Finance and Control of the State of
Connecticut, Defendant-Appellant.

No. 951, Docket 75–7125.

United States Court of Appeals,
Second Circuit.

Argued June 20, 1975.

Decided Aug. 1, 1975.

Maurice Myrun, Asst. Atty. Gen., Hartford, Conn. (Carl R. Ajello, Atty. Gen., and Paige J. Everin, Asst. Atty. Gen., Hartford, Conn., of counsel), for defendant-appellant.

Michael J. Churgin, New Haven, Conn. (Stephen Wizner and Dennis E. Curtis, New Haven, Conn.), for plaintiff-appellee.

Before LUMBARD, GIBBONS * and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

This action was originally brought pursuant to 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343, seeking declaratory relief holding certain Connecticut statutes unconstitutional and ordering moneys taken from the plaintiff-appellee, Robert McAuliffe, to be returned to him. McAuliffe was hospitalized in Connecticut mental health facilities after having been convicted of the crime of breaking and entering. Pursuant to two Connecticut statutes, the defendant-appellant, Connecticut's Commissioner of Finance and Control, obtained two sets of funds belonging to McAuliffe and applied the money toward the costs of McAuliffe's treatment. The first set of these funds consisted of Social Security benefits due McAuliffe, which defendant obtained directly from HEW after having been duly named McAuliffe's "representative payee" under 42 U.S.C. § 405(j). The Commissioner's authority to appropriate such payments for appellee's hospital expenses was derived from Conn.Gen.Stat. § 17–318, quoted in the margin.[1] The second

---

* Of the United States Court of Appeals for the Third Circuit, sitting by designation.

1. Conn.Gen.Stat. § 17–318 provides:

When any person has been transferred from the Connecticut Correctional Institution, Somers, the Connecticut Correctional Institution, Niantic, or its maximum security division, or the Connecticut Correctional Institution, Cheshire, to a state hospital, such person's hospital expense prior to the termination of his sentence shall be charged to the

sum was deposited by McAuliffe in a patient's account at one of the hospitals at which he was treated; this defendant obtained in his statutory role as McAuliffe's conservator.[2]

■ In an earlier opinion reported at 377 F.Supp. 896 (D.Conn.1974) Judge Newman had rendered a declaratory judgment that the Connecticut statutes which authorized defendant's actions were unconstitutional. The District Court in that opinion expressly reserved the question whether the Eleventh Amendment barred a claim for restitution as an incident to the present federal action if Connecticut should refuse to return plaintiff's property. 377 F.Supp. at 906 n.13. A supplementary decision ordering the Commissioner to return the money was rendered in response to Connecticut's continued refusal to do so in spite of the declaratory judgment of unconstitutionality. Judge Newman held

that the Commissioner's acts violated fiduciary obligations imposed on him as a matter of Connecticut law.[3] 386 F.Supp. 1245 (D.Conn.1975). On this appeal, the issue is whether there is federal jurisdiction for the order in light of the Eleventh Amendment.[4]

■ The Eleventh Amendment applies even when a state official is the only formal defendant and the state itself is not a named defendant. See *Fitzpatrick v. Bitzer*, 519 F.2d 559, 563–64 (2 Cir. 1975). The state in such cases can, nevertheless, be the real party in interest because at issue is a "liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974) (funds wrongfully withheld). "These funds will obviously not be paid out of the pocket of petitioner [Carlson]". Id. at 664, 94 S.Ct. at 1356.

state. When any person has been transferred from a community correctional center to a state hospital, such person's hospital expense prior to the termination of his sentence shall be paid out of the estate of such person, if he has any estate; if he has no estate, it shall be paid by the state. If any person, transferred from a correctional institution is committed to a state hospital after the expiration of his sentence, such person's hospital expense shall be paid to the state in the manner provided for payment in this chapter.

The Commissioner's designation as "representative payee" of McAuliffe's Social Security benefits was pursuant to Conn.Gen.Stat. § 4–68c, which authorized the Commissioner to act in a fiduciary capacity "under . . . any instrumentality . . . of the United States . . . ."

2. Conn.Gen.Stat. § 4–68g provides in pertinent part:

Whenever any person having property or an interest in property is committed or admitted to a state institution for the mentally ill or mentally retarded or, subsequent to such commitment or admission, acquires property or an interest in property, and the property is personal property of any kind or nature, not in excess of five thousand dollars, or annual income not in excess of said amount, no guardian or conservator shall be appointed, and the commissioner of finance and control shall be the guardian or conservator

of such person, without court proceedings, only for the purposes hereinafter specified. . . . Said commissioner shall hold or use such property or funds for the support and benefit of such person in the same manner as a duly appointed conservator, and shall maintain records of such property or funds and the disposition thereof.

3. Judge Newman also declined to award attorney's fees, which at the time the decision was rendered was thought to be a discretionary matter. A cross-appeal from that determination was withdrawn by permission of the court after the decision of the Supreme Court in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), limiting the award of fees to adversary counsel in the absence of settled doctrine or specific statutory authority. 42 U.S.C. § 1983, the provision underlying the present action, contains no such authorization.

4. The Eleventh Amendment provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Amendment also bars suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

■ We reject McAuliffe's contention that this case is not within the Eleventh Amendment because the money was taken from him. involuntarily. Equitable restitution is, in practical effect, indistinguishable from an award of damages against the state. *Edelman, supra,* 415 U.S. at 668–69, 94 S.Ct. at 1358, 39 L.Ed.2d at 676. Even in those cases where the claim is that a state has illegally taken or used plaintiff's property, not merely wrongfully withheld it, the Eleventh Amendment applies with full force; and neither the means of obtaining such funds nor the formalities of the manner in which they are held limits the scope of the Eleventh Amendment rejection of federal judicial power. *Ford Motor Company v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945) (taxes unconstitutionally collected); *Knight v. State of New York,* 443 F.2d 415 (2 Cir. 1971) (real property unconstitutionally taken); *Fitzpatrick v. Bitzer, supra* (money held in separate fund).

The only exception in this area allows federal courts to require expenditure of state funds in implementing prospective relief, since such relief is said to have only an "ancillary" impact on the state treasury. See *Edelman, supra,* 415 U.S. at 668, 94 S.Ct. at 1358, 39 L.Ed.2d at 675; *Jordan v. Fusari,* 496 F.2d 646, 651 (2 Cir. 1974). In this case no injunctive relief was sought or granted, and the payment ordered is not ancillary to prospective relief. The order requires the state to make a payment in restitution of a past wrong from the state treasury. Whether the payment is called damages, retroactive payment, or restitution, the effect upon the fisc is the same. We believe that *Ford Motor,* as reaffirmed in *Edelman,* 415 U.S. at 668–69, 94 S.Ct. at 1358, 39 L.Ed.2d at 676, makes this clear, and the District Court so held.

■ Appellant's essential ground of appeal is that the District Court erred, however, in its holding that Connecticut has waived its Eleventh Amendment immunity from federal suit. We agree. The District Court held that both Connecticut statutes at issue contained implied waivers of immunity concerning disputes arising out of the Commissioner's fiduciary activities toward prisoner-patients. That may well be true, but it does not determine the question of federal jurisdiction. A state may waive Eleventh Amendment immunity, but "a clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found." *Great Northern Ins. Co. v. Read,* 322 U.S. 47, 54, 64 S.Ct. 873, 877, 88 L.Ed. 1121 (1945). See *Rothstein v. Wyman,* 467 F.2d 226, 238–39 (2 Cir. 1972), *cert. denied,* 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973). No such intention can be found here.

The fact that the funds taken from the appellee were funds to be paid to him by the Social Security Administration does not affect the Eleventh Amendment issue. Participation in the Social Security Act falls short of a "constructive" waiver of a participating state's Eleventh Amendment immunity. *Edelman, supra,* 415 U.S. at 673, 94 S.Ct. at 1361, 39 L.Ed.2d at 679. In any event, the assumption by the Commissioner of fiduciary duties with attendant consequences was based upon Connecticut's own statutes. McAuliffe did not allege that federal statutes required these functions to be performed. Compare *Johnson v. Harder,* 383 F.Supp. 174 (D.Conn.1974), *aff'd per curiam,* 512 F.2d 1188 (2 Cir. 1975), petition for cert. filed, 44 U.S.L.W. 3007 (U.S.June 2, 1975) (No. 74–1552). The extent of the fiduciary obligations at issue is thus a matter of state law.

In these circumstances, applying the test of the Supreme Court that such waiver may be found "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction'," *Edelman, supra,* 415 U.S. at 673, 94 S.Ct. at 1361

(citation omitted), we hold that Connecticut has not waived its immunity to federal suit.

We do not necessarily disagree with the District Court that the assumption of fiduciary obligations under the Connecticut statutes suggests the availability of judicial review. That would ordinarily mean state court review.[5] We think the District Court erred, however, when it went further. We have said recently (after the decision below) that "unless a 'clear indication' to submit to suit in federal as well as state court can be found, a federal court cannot read the state's consent to be sued in its own courts as embracing federal jurisdiction." *Fitzpatrick v. Bitzer, supra,* at 566. Considerations of comity underlying the Eleventh Amendment support the conclusion, moreover, that the state court is the more appropriate forum for judicial review of the Commissioner's actions.

If federal rights should become involved in a state court action for restitution, the state courts will give them full effect. *Employees v. Missouri Public Health Dept.,* 411 U.S. 279, 298, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) (concurring opinion of Marshall, J.). We express no opinion, however, on Judge Newman's treatment of the substantive issues involved.

The supplemental order is reversed without prejudice to further proceedings in the state court.

---

**5.** We have been cited to no Connecticut decisions which would aid in determining whether its courts have ever assumed jurisdiction to enforce such obligations under these statutes.

Compare *Fitzpatrick v. Bitzer, supra,* at 565–566; *Knight v. State of New York, supra,* 443 F.2d at 418–22.