**Dolta Jo MORGAN, Plaintiff-Appellee,**

v.

**James C. FLETCHER, Administrator, National Aeronautics and Space Administration, et al., Defendants-Appellants.**

No. 74–2566.

United States Court of Appeals, Fifth Circuit.

Aug. 27, 1975.

Rehearing and Rehearing En Banc Denied Oct. 22, 1975.

Edward B. McDonough, U. S. Atty., William L. Bowers, Jr., Asst. U. S. Atty., Houston, Tex., William Kanter, Harry R. Silver, Robert Greenspan, Dept. of Justice, Washington, D. C., for defendants-appellants.

David T. Lopez, Houston, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, and WISDOM and COLEMAN, Circuit Judges.

COLEMAN, Circuit Judge.

The National Aeronautics and Space Administration (NASA) appeals a District Court order which enjoined, until she shall have had a full evidentiary hearing, the dismissal of employee Dolta Jo Morgan.

We reverse.

The parties agree that two questions are presented:

1. Whether in the light of *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) there was irreparable injury justifying injunctive relief prior to employee exhaustion of available administrative remedies;

2. Does the delay of a full evidentiary hearing until after employment

termination (as provided by Section B 302 of the *NASA Grievances and Adverse Actions Appeals Systems Manual*) violate the Lloyd-LaFollette Act, 5 U.S.C., § 7501(b)?

▮ The facts are hotly disputed. Nevertheless, at this point we are not concerned with the ultimate propriety of Mrs. Morgan's discharge but only with the propriety of injunctive relief. In reviewing preliminary injunctions the merits of the controversy are not considered beyond that necessary to determine whether there has been an abuse of discretion, *DiGiorgio v. Causey*, 5 Cir., 1973, 488 F.2d 527.

Mrs. Dolta Jo Morgan is a secretary in the Health Services Division of NASA in Houston, Texas. She has been employed by NASA since 1965, gaining the status of a tenured career civil servant in 1968.

The record shows no evidence prior to the Spring of 1973 of any disciplinary action being taken against Mrs. Morgan. At that time she was verbally reprimanded. In August of 1973 she received a written reprimand for "Failure to Carry Out Orders and Work Assignments of Superior". In October she initiated a complaint of sex discrimination with the Equal Employment Opportunity Office. On November 7, one day after completion of her informal complaint with EEOC, she was suspended for ten days for "AWOL and Repeated Acts of Refusal to Carry Out Instructions". On November 14, Mrs. Morgan filed a formal complaint with EEOC, which completed its investigation on January 25, 1974. On January 18, 1974, she was given notice by NASA of its proposal to remove her within thirty days. Based on seven separate charges, the decision was forthcoming on February 13, 1974. Separation was set for February 22, 1974. At that time, Mrs. Morgan filed the current action in District Court and was granted an injunction prohibiting her removal until she is granted a full hearing by the agency.

The District Court found that irreparable harm would befall Mrs. Morgan if she was discharged prior to a full hearing. This was based on two facts: first, Mrs. Morgan's salary represents 45% of her family's income, a loss of which would probably lead to foreclosure of her home; second, the loss of medical insurance benefits would irreparably injure Mrs. Morgan because of her current overwrought condition.

The District Court also found that Mrs. Morgan was denied due process of law because NASA regulations allow only a post-termination hearing. The Court noted that the Lloyd-LaFollette Act, 5 U.S.C., § 7501(b), provides that in the removal of an employee a "hearing is not required but may be provided in the discretion of the individual directing the removal . . . ."[1] However, NASA regulations provide that "[a]n employee will be granted only one hearing and it will be held after the original decision to take adverse action".[2] The District Court held that the controlling NASA regulation was in conflict with 5 U.S.C.,

1. The full text of the Act provides:

"(a) An individual in the competitive service may be removed or suspended without pay only for such causes as will promote the efficiency of the service.

"(b) An individual in the competitive service whose removal or suspension without pay is sought is entitled to reasons in writing and to—

"(1) notice of the action sought and of any charges preferred against him;

"(2) a copy of the charges;

"(3) a reasonable time for filing a written answer to the charges, with affidavits; and

"(4) a written decision on the answer at the earliest practicable date.

"Examination of witnesses, trial, or hearing is not required but may be provided in the discretion of the individual directing the removal or suspension without pay. Copies of the charges, the notice of hearing, the answer, the reasons for and the order of removal or suspension without pay, and also the reasons for reduction in grade or pay, shall be made a part of the records of the employing agency, and on request, shall be furnished to the individual affected and to the Civil Service Commission."

2. Section B 302, *NASA Grievances and Adverse Actions Appeals Systems Manual.*

§ 7501(b) because it precluded the exercise of discretion by the removing officer in granting a pretermination. hearing. The lower court felt this apparent conflict had the effect of depriving Mrs. Morgan of her constitutional right to due process of law.

■■■■ The function of a preliminary injunction is merely to preserve the status quo until the merits of a case can be adjudicated, *American Radio Association v. Mobile Steamship Association, Inc.,* 5 Cir., 1973, 483 F.2d 1; *Exhibitors Poster Exchange v. National Screen Service Corporation,* 5 Cir., 1971, 441 F.2d 560. The universally accepted standard for appellate test of an injunction is whether there was an abuse of discretion in granting or denying it, *Brown v. Chote,* 411 U.S. 452, 457, 93 S.Ct. 1732, 1735, 36 L.Ed.2d 420 (1973); *Johnson v. Radford,* 5 Cir., 1971, 449 F.2d 115; *Conservation Council v. Costanzo,* 4 Cir., 1974, 505 F.2d 498, 502; 7 Moore's Federal Practice § 65.04 (2d ed. 1974). The discretion of the District Court, however, is not completely unrestrained; it must be exercised with regard to what this Court has labeled "the four prerequisites for the extraordinary relief of preliminary injunction", *Allison v. Froehlke,* 5 Cir., 1972, 470 F.2d 1123, 1126; *Canal Authority v. Callaway,* 5 Cir., 1974, 489 F.2d 567. The four prerequisites are: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest, *Canal Authority v. Callaway, supra; Blackshear Residents Organization v.*

*Romney,* 5 Cir., 1973, 472 F.2d 1197; *DiGiorgio v. Causey, supra.*

The District Court did find specifically that it was likely that the plaintiff would prevail on the merits and that a denial of the injunction would cause irreparable damage to the plaintiff.

Concepts such as irreparable injury are incapable of precise definition and, by their nature, depend on the circumstances surrounding each case. Some considerations relevant to irreparable injury have been settled, however, and in a recent case quite similar to the case at bar, the Supreme Court discussed these considerations. In *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), a probationary [3] federal employee filed an action in District Court seeking to temporarily enjoin her dismissal pending pursuit of administrative remedies. The District Court granted an injunction until the agency involved testified about the reasons for respondent's dismissal. The D. C. Court of Appeals affirmed.[4] The Supreme Court reversed, holding that a mere loss of income or damaged reputation would "fall far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction in this type of case".[5] The Supreme Court recognized that there could be cases which were such a substantial departure from normal situations that a district court would be justified in finding irreparable injury and granting injunctive relief. The Court, however, continued by saying:

"Such extraordinary cases are hard to define in advance of their occurrence. We have held that an insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most dis-

---

**3.** Probationary employees are not afforded the greater procedural advantages available to tenured federal employees. Although the plaintiff in the present case was a tenured civil servant, this distinction would not appear to have any great effect on whether the employee was irreparably injured.

**4.** *Murray v. Kunzig,* 149 U.S.App.D.C. 256, 462 F.2d 871 (1972).

**5.** 415 U.S. at 91–92, 94 S.Ct. at 953.

charged employees and not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury, however severely they may affect a particular individual." [6]

■ Under the authority of *Sampson,* it would seem clear that the District Court's partial predication of irreparable injury on the loss of 45% of the family income is erroneous. In *Virginia Petroleum Jobbers Association v. Federal Power Commission,* 104 U.S.App.D.C. 106, 259 F.2d 921 (1958), quoted with approval by the Supreme Court in *Sampson,*[7] the issue of temporary loss of income was spoken to as follows:

"The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weights heavily against a claim of irreparable harm." [8]

Here, as in *Sampson,* Mrs. Morgan will be entitled to the benefits of the Back Pay Act[9] which will provide her with full back pay should her discharge later prove wrongful.

■ The trial court also grounded its finding of irreparable injury on the fact that Mrs. Morgan would lose her medical insurance benefits. She was found to be in an "overwrought condition" because of the discharge and it was apparently extrapolated that she would require the use of these benefits in the near future. This, we think, was conjectural only and will not suffice as support for a finding of irreparable injury.[10]

The District Court was cognizant of *Sampson, supra,* but nevertheless found that the present case was an extraordinary situation wherein the plaintiff was entitled to equitable relief. We are constrained to disagree.[11]

■ Does the NASA requirement that all discharged employees be granted a full evidentiary hearing only after their termination violate the Lloyd-LaFollette Act and deny the employees due process of law?

Section B 302, *NASA Grievances and Adverse Actions Appeals Systems Manual* provides that "[a]n employee will be granted only one hearing and it will be held after the original decision to take adverse action". The Lloyd-LaFollette Act[12] provides that a "hearing is not required but may be provided in the discretion of the individual directing the removal . . . ." The District Court found that the NASA regulation was repugnant to the statutory grant of responsible individual discretion, and thereby deprived the plaintiff of due process of law.[13]

6. 415 U.S. at 92 n. 68, 94 S.Ct. at 953. *Accord, Soldevila v. Secretary of Agriculture of United States,* 1 Cir., 1975, 512 F.2d 427, 430.

7. 415 U.S. at 90, 94 S.Ct. at 953.

8. 104 U.S.App.D.C. at 110, 259 F.2d at 925 (emphasis in original).

9. 5 U.S.C., § 5596 (1970).

10. *See Soldevila v. Secretary of Agriculture of United States,* 1 Cir., 1975, 512 F.2d 427, 430 (showing of irreparable injury must be extraordinarily strong; psychological problems resulting from discharge, loss of earnings and other adverse results found insufficient).

11. The appellee in her brief cites this Court's opinion in *Drew v. Liberty Mutual Insurance Company,* 5 Cir., 1973, 480 F.2d 69, as being in support of her claim to irreparable injury. That case is clearly distinguishable, however, since in *Drew* the plaintiff was the sole "breadwinner" for her family and moreover the case was decided before the Supreme Court had spoken in *Sampson.*

12. 5 U.S.C., § 7501(b) (1970) (for full text of Act see note 1, *supra.*)

13. Following the logic of the District Court to its natural extension, we would be forced to conclude that under the Lloyd-LaFollette Act the officer directing the removal of an employee could in his discretion deny the employee *any* hearing whatsoever and be compatible with due process. Anomalously, the District Court holds that the agency's grant of a post-termination hearing in all cases is inimical to due process.

During the trial of the present case the Supreme Court handed down its decision in *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). The District Court considered the *Arnett* case on a motion for a new trial by NASA but rejected it, saying that the case in no way "eliminated or further narrowed the ultimate equity power of a federal District Court to grant a pretermination review in an appropriate and extraordinary case".[14]

In *Arnett,* a tenured O.E.O. employee was terminated in conformity with the Lloyd-LaFollette Act in the form of a "notification of proposed adverse action". The employee was notified of the charges against him and given a right to reply to the charges both orally and in writing. He was then notified that he would be removed from his position within one week and was advised of his right to appeal the termination decision. A full hearing to test the validity of the discharge would be provided, if the employee so desired, on appeal. Eschewing the agency procedures provided, the employee began an action in District Court attacking his discharge on the grounds that a discharge prior to a hearing denied him due process of law. A three-judge District Court agreed, ordered the employee reinstated, and enjoined the agency from dismissing him without the safeguard of a pretermination hearing. On appeal, the Supreme Court reversed, holding that "a hearing afforded by administrative appeal procedures *after* the actual dismissal is a sufficient compliance with the requirements of the Due Process Clause".[15]

Our reading of the Lloyd-LaFollette Act indicates that it provides only that the individual directing the removal may at his discretion grant or not grant a hearing.[16] Nothing is mentioned about whether the hearing must be pre or post-termination.[17] The Supreme Court in *Arnett v. Kennedy, supra,* declared that due process does not require that an agency hold a pretermination hearing. If due process doesn't demand a pretermination hearing, then it does not matter that under NASA regulations there is no discretion to grant one.[18] The Lloyd-LaFollette Act clearly allows discretion only to grant a hearing. The NASA regulation which provides a post-termination hearing in all cases is not in derogation of this statute.

The judgment of the District Court is Reversed.

14. App. 34.

15. 416 U.S. at 157, 94 S.Ct. at 1646 (emphasis added).

16. The plurality opinion, authored by Mr. Justice Rehnquist and concurred in by Justice Stewart and Chief Justice Burger, thought that the Act by granting discretion to have any or no hearing was constitutionally sound. The concurring opinion of Justice Powell, joined in by Justice Blackmun, stated that some type of hearing was constitutionally mandated but it need not be prior to termination. *See Arnett v. Kennedy, supra.*

17. Although the Lloyd-LaFollette Act is silent as to when the hearing may be held, applicable Civil Service regulations in force at the time of the adverse action notice provided that the "hearing may precede either the original decision or the appellate decision, at the agency's option". 5 CFR § 771.208 (1974).

All but eight agencies have chose to provide a hearing only on appeal. Merrill, Procedures for Adverse Actions Against Federal Employees, 59 Va.L.Rev. 196, 216 (1973).

18. The O.E.O. regulations concerning adverse actions which governed the employees right to a hearing in *Arnett* are not as specific as the NASA regulations as to when a hearing must be held. They state that "an employee is entitled to a hearing on his appeal before an examiner" giving the implication that there is only a right to a post-termination hearing. *See* O.E.O. Staff Instruction No. 771–2 (1971).