Clyde BAKER and Clinton Baker, Plaintiffs,

v.

The SCHOOL BOARD OF MARION COUNTY, FLORIDA and H. L. Rogers, District Superintendent of Schools, Defendants.

No. 80–32–Civ–Oc.

United States District Court,
M. D. Florida,
Ocala Division.

March 11, 1980.

Ronald G. Meyer, Gen. Counsel, Florida Teaching Profession, NEA, Tallahassee, Fla., R. Scott Cross, Ocala, Fla., for plaintiffs.

Gary Simons, Edwin C. Cluster, Ocala, Fla., for defendants.

## OPINION

CHARLES R. SCOTT, Senior District Judge.

This action was filed on February 25, 1980. At this juncture the Court is concerned only with whether preliminary injunctive relief is appropriate pending a trial on the merits. This Court has jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343(3) and (4), 2201, and 2202. Having heard all the evidence and argument of counsel on plaintiffs' application for preliminary injunction, the Court now enters findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure.

*Findings of Fact*

The Court finds that the plaintiffs Clyde Baker and Clinton Baker are employed as teachers by the defendant School Board of Marion County, Florida under continuing contracts of employment as provided in Florida Statutes § 231.36. On January 28, 1980, the plaintiffs were notified by letters signed by defendant H. L. Rogers, District Superintendent of Schools, that the plaintiffs were suspended with pay effective immediately, pursuant to the provisions of Florida Statute § 230.33(7)(h). The letter also notified the plaintiffs that they were charged with immorality and misconduct in office based upon the affidavits of officers of the Division of Alcoholic Beverages and Tobacco of the State of Florida, who allegedly discovered less than twenty grams of marijuana and a quantity of alcoholic beverages not covered under the license on the premises of the Club Aquarius, an establishment operated by the plaintiffs. The letter further informed the plaintiffs of the superintendent's intention to recommend their suspension without pay at the next meeting of the School Board on February 12, 1980, pursuant to the provisions of Florida Statute § 231.36(6).[1]

On January 31, 1980, plaintiffs' counsel made a written demand to defendant Rogers for a full hearing at the board meeting or for continuation of the suspension with pay until such a hearing could be arranged. That request was denied on February 4, 1980. On February 5, 1980, plaintiffs' counsel advised the attorney for the school

---

1. Florida Statute § 231.36(6) as amended (1978) provides:

(6) Any member of the district administrative or supervisory staff and any member of the instructional staff, including any principal, may be suspended or dismissed at any time during the school year; provided that the charges against him must be based on immorality, misconduct in office, incompetency, gross insubordination, willful neglect of duty, drunkenness or conviction of any crime involving moral turpitude. Whenever such charges are made against any such employee of the school year, the school board may suspend such person without pay, but if charges are not sustained he shall be immediately reinstated and his back salary shall be paid. In cases of suspension by the school board or by the superintendent, the school board shall determine upon the evidence submitted whether the charges have been sustained and, if said charges are sustained, either to dismiss said employee or fix the terms under which said employee may be reinstated. If such charges are sustained by a majority vote of the full membership of the school board and such employee is discharged, his contract of employment shall be thereby cancelled. If the employee is under continuing contract, any such decision adverse to him may be appealed by him in writing to the Department of Education, through the Commissioner, for review; provided such appeal is filed within 30 days after the decision of the school board, and provided further that the decision of the Department shall be final as to sufficiency of the grounds for dismissal.

board of the case law relied upon in making the demand.[2]

Plaintiffs' counsel and plaintiff Clinton Baker were present at the February 12 school board meeting, where plaintiffs' counsel renewed his request that no suspension without pay be imposed until after a hearing. In addition, plaintiffs' counsel advised the board that plaintiff Clinton Baker was ready to proceed with a hearing or to answer questions at that time. The school board then proceeded to vote to suspend the plaintiffs without pay until a hearing on the matter at the board's March 11 meeting. Plaintiffs have been suspended without pay since February 12, 1980.

On February 25, 1980, plaintiffs filed the complaint in this action together with an application for preliminary injunction, verified by plaintiffs' counsel.[3] By their application, plaintiffs ask this Court to enjoin the school board from denying plaintiffs their pay until after an evidentiary hearing in which the superintendent would bear the burden of proving the charges against the plaintiffs and plaintiffs would have the opportunity to rebut those charges.

### Conclusions of Law

■ A preliminary injunction is an extraordinary equitable remedy. *Sampson v. Murray*, 415 U.S. 61, 92 n. 68, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974). Its purpose is simply to preserve the status quo until adjudication of the case on its merits. *Morgan v. Fletcher*, 518 F.2d 236, 239 (5th Cir. 1975). Not every change in circumstances merits such relief, however. The burden is on the plaintiff to show the Court that irremediably deteriorating conditions threaten to prevent the Court from rendering a proper judgment on the merits. *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 573, 576 (5th Cir. 1974). This burden is met by showing the existence of four criteria:

(1) irreparable injury because of the unavailability of an adequate remedy at law;

(2) substantial likelihood of plaintiff's success on the merits;

(3) threatened injury to plaintiff which outweighs any possible injury to the defendant; and

(4) that issuance of a preliminary injunction will not disserve the public interest.

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers, Local 70*, 415 U.S. 423, 441, 94 S.Ct. 1113, 1125, 39 L.Ed.2d 435 (1974); *Morgan v. Fletcher, supra* at 239. While it is true that the Court, in considering whether these criteria have been met, should use a sliding-scale analysis, in which a strong showing on one criterion may lessen that required for the others, the principal and overriding prerequisite is, nevertheless, the existence of irreparable injury resulting from an inadequate remedy at law. *Sampson v. Murray, supra* 415 U.S. at 88–89, 94 S.Ct. at 951–952. Furthermore, the United States Supreme Court has warned that in a case involving discharge of a government employee, "[t]he District Court, exercising its equitable powers, is bound to give serious weight to the obviously disruptive effect which the grant of the temporary relief . . . was likely to have on the administrative process." *Sampson v. Murray, supra* at 83, 94 S.Ct. at 949. With these thoughts in mind, the Court has examined the four criteria.

### Likelihood of Success on the Merits

Without intending any final adjudication on the merits of this case, the Court tentatively concludes that the plaintiffs' likelihood of success on the merits is good. In the case at bar, suspension without pay is for all practical purposes the equivalent of termination. All benefits of employment have been lost. *Thurston v. Dekle*, 531 F.2d

---

**2.** Plaintiffs relied principally upon the decision of this Court in *Mattix v. Rumph*, No. 73–307–Civ–J–S (M.D.Fla. August 2, 1979).

**3.** An affidavit of plaintiff Clinton Baker, restating the facts contained in the application, was later substituted in order to avoid any ethical difficulties in the event that the facts should be disputed.

1264, 1272 (5th Cir. 1976). *See Goss v. Lopez*, 419 U.S. 565, 574–76, 95 S.Ct. 729, 736–737, 42 L.Ed.2d 725 (1975). Although the Constitution does not require a full evidentiary hearing prior to termination, it would appear that plaintiffs were not afforded the minimal due process procedures "which will minimize the risk of improper termination" where a government employer chooses to defer an employee's full evidentiary hearing until after termination. *Thurston v. Dekle, supra* at 1273; *Mattix v. Rumph*, No. 73–307–Civ–J–S at 3–4 (M.D. Fla. August 2, 1979). *See Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). These minimal requirements are plainly set forth in *Thurston v. Dekle, supra*:

> These must include, prior to termination, written notice of the reasons for termination and an effective opportunity to rebut those reasons. Effective rebuttal must give the employee the right to respond in writing to the charges made and to respond orally before the official charged with the responsibility of making the termination decision.

531 F.2d at 1273. While the Court is cognizant of the factual and legal issues raised in defendants' memoranda filed in response to the application for preliminary injunction,[4] they do not change the Court's tentative conclusion that the opinion in *Thurston v. Dekle* states the controlling law.

*Harm to Plaintiffs Versus Possible Harm to Defendants and the Public Interest*

In cases involving a government employer, the criterion concerning the balance of harms and the criterion requiring consideration of the public interest appear to be inextricably intertwined. *See, e. g., Sampson v. Murray, supra*, 415 U.S. at 83–84, 94 S.Ct. at 949–950; *Thurston v. Dekle, supra* at 1272–73. Both *Thurston v. Dekle* and *Sampson v. Murray* teach that serious weight must be given to the disruption of the administrative process of a government employer, especially with respect to internal matters such as personnel actions. *Id.* It is in the public interest to preserve administrative efficiency under these circumstances, and interference with the administrative process both harms the defendant employer and disserves the public interest. It would seem, however, that the weight to be accorded this inherent harm to the administrative process and the public presupposes that the defendants were in fact acting in accordance with a recognized administrative procedure, regardless of whether the procedure itself ultimately would pass constitutional muster. If it were shown that defendants acted in ignorance or in defiance of a recognized procedure, then there would be no inherent harm or disservice to the public interest in enjoining the action.

The plaintiffs characterize the defendants' actions as a wilful violation of the law, based on the fact that the plaintiffs took pains to advise the defendants of the legal authority upon which they based their demands for a hearing.[5] The Court is somewhat less inclined to adopt that view at this point. On the basis of the present record, this does not appear to be a case in which defendants flagrantly ignored plaintiffs' right to due process. It appears that defendants endeavored to follow the administrative guidance set forth in Florida Statutes § 231.36(6).[6] The Court notes that the statute has been recently amended and that defendants apparently sought advice of counsel before acting. A hearing, albeit after plaintiffs' suspension without pay, was scheduled less than thirty days from the effective date of the suspension of pay. The Court concludes, therefore, that the inherent harm and disservice to the public interest in interrupting the administrative process must be accorded serious weight in this case.

In addition, defendants contend that the position of teacher is so sensitive and influ-

---

4. The Court omits a discussion of the issues raised by defendants since these issues will doubtless be further developed during the course of these proceedings and because the likelihood of plaintiffs' success on the merits is not determinative of the issue before the Court with respect to the application for preliminary injunction.

5. See note 2, *supra*.

6. See note 1, *supra*.

ential and the problem of drug abuse of such grave concern that it would disserve the public interest to grant injunctive relief in the case at bar. Defendants argument overlooks the fact that plaintiffs are not seeking reinstatement to their teaching positions in this application for preliminary relief. They ask only that defendants be enjoined from denying them their pay during the period of suspension. The Court notes, further, that defendants refused plaintiffs' offer to work in a non-teaching capacity in lieu of suspension.

Defendants also contend they will be harmed (and inferentially, the public disserved) to some extent by an injunction which would require the expenditure of public funds to pay the plaintiffs during the period of suspension. It is true that these funds could prove difficult to recover in the event that these plaintiffs are ultimately discharged. The period at issue here is short, however, and the potential harm is further diminished by the Court's previous finding that plaintiffs are likely to succeed on the merits. In the event of plaintiffs' success, the money would ultimately be paid anyway.

Plaintiffs will certainly suffer the loss of income if the injunction is not granted. This loss may result in default on current financial obligations and could lead to permanent diminution of their credit status in the community and permanent loss of property by repossession, foreclosure, or otherwise. In addition, plaintiffs will have difficulty mitigating these losses through other employment during the period. The Court also notes that the vindication of constitutional rights, regardless of the absence of great monetary harm, serves the public interest. *See Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

The Court concludes that the harm to plaintiffs outweighs any potential harm to defendants that would result from an injunction of their action denying plaintiffs their pay during the period of suspension preceding the hearing. The Court concludes, however, that an injunction would disserve the public interest in light of the foregoing discussion of the Court's tenta-

tive findings regarding the defendants' actions in this matter and in light of plaintiffs failure to show that the harm they will suffer constitutes irreparable injury.

### Irreparable Injury

■ It is not enough that the plaintiffs' harm merely outweighs the possible harm to the defendants. The plaintiffs' injury must be shown to be irreparable. *Sampson v. Murray, supra*, 415 U.S. at 88, 94 S.Ct. at 951; *Morgan v. Fletcher, supra* at 239–40. The Court has considered plaintiffs' injuries presented by affidavit and at the hearing and concludes that plaintiffs have failed to carry their burden of showing that these injuries are irreparable as a result of the unavailability of an adequate remedy at law.

As is apparent from the preceding discussion of harm, plaintiffs' injuries are financial in nature. Mere financial injury, however substantial, is not enough.

[I]t seems clear that the temporary loss of income, ultimately to be recovered, does not constitute irreparable injury. In . . . [*Virginia Petroleum Jobbers, Assoc. v. FPC*, 259 F.2d 921 (D.C. Cir. 1958)] the court stated:

"The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

*Sampson v. Murray, supra*, 415 U.S. at 90, 94 S.Ct. at 953; *Morgan v. Fletcher, supra* at 240.

At the hearing, plaintiffs also contended that suspension without pay would result in stigmatization which would constitute irreparable injury. *See, e. g. Keyer v. Civil Service Commission of City of New York*, 397 F.Supp. 1362 (E.D.N.Y.1975). The distinguishing circumstances of the instant case, including the proximity of a full hearing on the charges, the nature and basis of the charges, and the type of sanction im-

posed, precludes stigmatization as a basis for a finding of irreparable injury. It is true that the opinion in *Sampson v. Murray, supra,* did not altogether foreclose the possibility of injunctive relief "in genuinely extraordinary" cases in which "the circumstances surrounding an employee's discharge, together with the resultant effect on the employees, may so far depart from the normal situation that irreparable injury might be found." *Id.,* 415 U.S. at 92 n. 68, 94 S.Ct. at 953. The Court is convinced that this is not the such a case. *Cf., e. g., Schrank v. Bliss,* 412 F.Supp. 28 (M.D.Fla. 1976) (preliminary injunction granted). Furthermore, the statute under which plaintiffs were suspended without pay specifically provides that if the charges against them are not sustained, they must be reinstated and awarded backpay.[7] The presence of such a guarantee weighs heavily against a claim of irreparable injury. *Sampson v. Murray, supra,* 415 U.S. at 80, 94 S.Ct. at 948; *Morgan v. Fletcher, supra* at 240. In short, there is an adequate remedy at law for plaintiffs' injuries.

In the absence of irreparable injury, plaintiffs' application for preliminary injunction must be denied. *Sampson v. Murray, supra; Morgan v. Fletcher, supra.* An order will be entered accordingly.