William Herbert HUNT, et al., Plaintiffs and Counter-Defendants,

v.

BANKERS TRUST COMPANY, et al., Defendants and Counter-Plaintiffs and Third-Party Plaintiffs,

v.

CRESCENT INVESTMENT COMPANY, et al., Third-Party Defendants.

PENROD DRILLING COMPANY, et al., Plaintiffs,

v.

MANUFACTURERS HANOVER TRUST COMPANY, et al., Defendants.

Civ. A. Nos. 3–86–1684–H, 3–86–2012–H.

United States District Court, N.D. Texas, Dallas Division.

Aug. 27, 1986.

Ben L. Krage, Kasmir Willingham & Krage, Dallas, Tex., Stephen F. Gordon, Edwin A. McCabe, McCabe/Gordon, P.C., Boston, Mass., for Hunt, et al.

Jim K. Choate, Dewey R. Hicks, Jr., John P. Lilly, Brice & Mankoff, Dallas, Tex., Frank G. Ker, Winslow Christian, Bank of America, Los Angeles, Cal., for Bank of America.

Robert F. Finke, Mayer, Brown & Platt, Chicago, Ill., Michael Niebruegge, Mayer, Brown & Platt, Houston, Tex., Carla R. Voelker, Richardson, Tex., for Bank of Montreal.

Fletcher L. Yarbrough, James E. Coleman, Peter Tierney, Tyler A. Baker, Carrington, Coleman, Sloman & Blumenthal, D. Ronald Reneker, Bird & Reneker, Dallas, Tex., for the Bank of Nova Scotia.

James G. Ulmer, J. Michael Baldwin, Baker & Botts, Houston, Tex., Robert W. Jordan, Erin Y. Baker, Baker & Botts, Dallas, Tex., for Bank of Scotland.

Robert M. Cohan, Lee M. Simpson, Cohan, Simpson, Cowlishaw, Aranza & Wulff, Dallas, Tex., David B. Eizenman, Moses & Singer, Robert P. Blank, Burton M. Freeman, Bankers Trust Co., New York City, for Bankers Trust Co.

James C. Kean, James E. Babcock, Thomas H. Lee, Dotson, Babcock & Scofield, Houston, Tex., Henry L. Goodman, Andrew D. Gottfried, Zalkin, Rodin & Goodman, New York City, for Chemical Bank.

Kenneth R. Wynne, Bracewell & Patterson, Houston, Tex., Robert H. MacKinnon, Mark P. Zimmett, Shearman & Sterling, New York City, for Citibank, N.A.

Michael M. Baylson, John Horstmann, Duane, Morris & Heckscher, Philadelphia, Pa., Steven Gutman, Legal Dept., European American Bank, New York City, Mike Joplin, Strasburger & Price, Dallas, Tex., for European American Bank & Trust Co.

Michael Lowenberg, Richard C. Levin, Maureen Armour, Nancy Ratchford, Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., for First City Nat. Bank of Houston.

James G. Ulmer, J. Michael Baldwin, Baker & Botts, Houston, Tex., Robert W. Jordan, Erin Y. Baker, Baker & Botts, Dallas, Tex., for First Interstate Bank of California.

W. Ted Minick, Winstead, McGuire, Sechrest & Minick, Houston, Tex., Jay J. Madrid, Winstead, McGuire, Sechrest & Minick, Dallas, Tex., Peter J. Kilchenmann, Lynn A. Goldstein, The First Nat. Bank of Chicago Law Dept., Chicago, Ill., for The First Nat. Bank of Chicago.

J. Carlisle DeHay, Jr., DeHay & Blanchard, Dallas, Tex., David A. Ranheim, Linda M. Freyer, Dorsey & Whitney, Minneapolis, Minn., for The First Nat. Bank of St. Paul.

Thomas A. Graves, Ernest E. Figari, Jr., James Pulis, Johnson & Swanson, Dallas, Tex., for Interfirst Bank—Dallas, N.A.

Melvyn L. Cantor, John J. Kerr, Jr., Thomas C. Rice, Wm. O. Murphy, Simpson, Thacher & Bartlett, New York City, Alfred H. Ebert, Jr., Andrews & Kurth, Houston, Tex., Charles R. Haworth, Andrews & Kurth, Dallas, Tex., for Manufacturers Hanover Trust Co.

Daniel Williams, Paul B. Zuydhoek, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N.Y., William J. Brennan, Phillips, Lytle, Hitchcock, Blaine & Huber, New York City, Stan McMurry, Rain Harrell Emery Young & Doke, Dallas, Tex., for Marine Midland Bank, N.A.

W. Frank Carroll, Irvin C. Ness, Martha J. Hardwick, Stinson, Mag & Fizzell, Dallas, Tex., for Mellon Bank, N.A.

James P. Grove, IV, Rex H. White, Jr., White & Grove, P.C., Austin, Tex., Vincent S. Walkowiak, Fulbright & Jaworski, Dallas, Tex., James C. Slaughter, Fulbright & Jaworski, Houston, Tex., for National Westminster Bank, P.C. Intern. Westminster Bank.

Jerry P. Jones, David R. McAtee, Timothy R. McCormick, Thompson & Knight, W. Michael Byrd, Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., for Republicbank Dallas, N.A.

Jim K. Choate, Dewey R. Hicks, Jr., John P. Lilly, Brice & Mankoff, Dallas, Tex., Carol Ann Bartlett, Senior Counsel, The Royal Bank of Canada, Fourth Floor, Law Dept., Montreal, Quebec, for Royal Bank.

James G. Ulmer, J. Michael Baldwin, Baker & Botts, Houston, Tex., Robert W. Jordan, Erin Y. Baker, Baker & Botts, Dallas, Tex., for Security Pacific Nat. Bank.

Jess Hall, Jr., D. Mitchell McFarland, James W. Paulsen, Liddell, Sapp & Zivley, Houston, Tex., Vera R. Bangs, Liddell, Sapp & Zivley, Dallas, Tex., for Texas Commerce Bank Nat. Assn.

Ronald E. Cook, R.T. Nassberg, Mayor, Day & Caldwell, Houston, Tex., for The Toronto Dominion Bank.

Walter L. Stratton, Mitchel A. Karlan, Gibson, Dunn & Crutcher, New York City, Thomas Craddock, Gibson, Dunn & Crutcher, Thomas B. Anderson, Jr., Vernon O. Teofan, Freytag, Perry, LaForce, Rubinstein & Teofan, Dallas, Tex., for Wells Fargo Bank, N.A.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

Before the Court is Plaintiffs' and Third-Party Defendants' ("Movants") Motion for a Temporary Restraining Order, filed August 22, 1986, with supporting affidavits, and Defendants' Responses, all filed August 26, 1986, with supporting affidavits. The Court held a conference on the Motion

August 27, 1986. For the reasons here stated the Motion will be denied.

## Background

On June 24, 1986, a complaint was filed in this Court against twenty-three banks, lenders to Placid Oil Company ("Placid") and Penrod Drilling Company ("Penrod"), seeking an award of substantial damages on a variety of claims. The complaint alleged deception and fraud, breach of fiduciary duties and other contractual obligations, and violations of the antitrust laws and other statutes regulating bank conduct. On July 29, 1986, Placid and Penrod filed a second complaint against the same twenty-three bank defendants, alleging a conspiracy to monopolize the offshore contract drilling industry. The banks have filed counterclaims seeking to collect on approximately $1.5 billion in loans from Movants. All parties have agreed to file any further judicial actions only in this Court. Agreed Preliminary Injunction, filed August 15, 1986.

The Placid indebtedness to the banks presently aggregates over $773 million, Rogers Affidavit at 2, and has been in default since March 27, 1986. *Id.* at 3. The Penrod indebtedness to the banks now aggregates over $725 million, Hansen Affidavit at 8, and has been in default since May 27, 1986. *Id.* at 4. Movants do not deny the indebtedness. Movants' Memorandum at 5; representations of Movants' counsel at conference.

The three Hunt Trust Estates are the owners of Penrod and are also obligated on the indebtedness; their ability or inability to pay has not been developed. The Trust Estates are not parties to the antitrust suit, Civil Action No. 3–86–2012–H. *See, infra.*

Recently, the Defendant Banks posted for foreclosure on August 29 and September 2, 1986, some of the collateral for the loans. Plaintiffs filed this Motion seeking to restrain those and all other foreclosures pending a decision on the merits.

## Analysis

To secure preliminary relief, the movant has the burden of proving four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the preliminary relief is not granted; (3) that the threatened injury to the movant outweighs any damage preliminary relief might cause to the opponent; and (4) that the relief sought will not disserve the public interest. *Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 471 (5th Cir.1985).[1] In considering whether to grant or deny preliminary relief, the district court must remember that such relief " 'is an extraordinary and drastic remedy,' and that '[t]he movant has a heavy burden of persuading the district court that all four elements are satisfied.' " If the movant does not succeed in carrying its burden on any one of the four prerequisites, preliminary relief may not be granted. *Enterprise, supra,* at 472. (citations omitted.)

## Irreparable Injury

"[I]t is not so much the magnitude but the irreparability that counts...." In short, "[t]he key word ... is '*irreparable*', and an 'injury is irreparable' only if it cannot be undone through monetary remedies." Thus, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

*Enterprise,* 762 F.2d at 472–73 (citations omitted, emphasis in original); *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974). The decision to grant preliminary relief is the exception rather than the rule. *Mississippi Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir.1985).

Six groups of property have been posted for foreclosure on August 29, 1986 and

---

**1.** The same factors govern an application for a temporary restraining order as govern a request for a preliminary injunction.

September 2, 1986: (1) real estate in Collin County, Texas[2]; (2) other Texas and Mississippi real estate; (3) oil and gas properties; (4) 100 shares of Placid Building & Supply Co. ("PBSC"), and some PBSC assets; (5) 1000 shares of Placid Refining Co. ("PRC") stock and some PRC assets; and (6) 100 shares of Placid Investment Co. ("PIC") stock. *See* Affidavit of Frederic D. Grant, Jr., Appendix 15 to Movants' Motion (hereafter "Mvts. App. ——") for complete descriptions of the properties. All but the first are collateral for loans to Placid; the Collin County real estate is collateral for Penrod loans. In their extensive collection of affidavits Movants have put forward a number of consequences which they contend constitute irreparable harm.

■ Movants have identified a number of unfavorable tax consequences that would follow foreclosure on the stock in two of the Placid subsidiaries. Foreclosure of PBSC's condominium interest in Thanksgiving Tower will result in the recapture of a $125,049 investment tax credit. Affidavit of Peat, Marwick, Mitchell & Co., Mvts. App. 5, at 7, 8. Foreclosure on the PIC stock could result in the loss of a tax benefit worth approximately $74,414,-622.38. Peat, Marwick Affidavit at 6. Neither of these losses are "irreparable" under Fifth Circuit case law. They both represent losses which can be reduced to specific figures, for which damages provide a complete remedy.[3] *Interox America v. PPG Industries, Inc.*, 736 F.2d 194, 202 (5th Cir.1984); *Danden Petroleum, Inc. v. Northern Natural Gas Company*, 615 F.Supp. 1093, 1099 (N.D.Tex.1985).

Movants also allege that the loss of the Mont Belvieu Processing Plant, owned in part by PRC, would result in irreparable injury because foreclosure would allegedly cause a six month interruption of production at the Black Lake oil field if the new owners declined to do business with the Black Lake mineral owners (including Placid). Affidavit of Phillip Clarke, Mvts. App. 6, at 4. No proof suggests, however, that foreclosure would result in such a cutoff. Indeed, Movants' claim that the plant is suited solely for use in processing Black Lake minerals, Clarke Affidavit at 3–4, indicates that the new owners would find continued business dealings with the mineral owners a virtual necessity. In the absence of any proof that foreclosure would lead to the harms described by the Clarke Affidavit, this is purely conjecture, "which will not suffice as support for a finding of irreparable injury." *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir.1975), *reh. den.*, 522 F.2d 1280; *Kaplan v. Board of Education of City School District of the City of New York*, 759 F.2d 256, 259 (2d Cir. 1985).

■ Movants allege with respect to each asset posted for foreclosure that they will suffer irreparable injury because the assets will be sold while the market for these assets is depressed. Affidavits of Phillip Clarke, Everette Truly, Carroll Brown, Daniel Roberson, and Donald Dillard. Mvts. App. 9, 11–14. Additionally, Movants contend that a potential contested tax liability of the various Placid Companies substantially reduces the value of the stock of the three Placid subsidiaries. Sale of these assets, Movants contend, will result in realization of less than the assets' "true value". This argument is unpersuasive for several reasons.[4]

---

**2.** This property is owned by the Plaintiff Trusts, not Penrod.

**3.** Plaintiffs' counsel expressed concern at the conference as to the public policy implications of remedying tax losses by damages. The Court sees no reason why, if the right to such losses is established, they could not be measured in damages. In any event, such public policy arguments would apply with equal force to prevent tax losses from being considered irreparable injury.

**4.** The calculation of what Movants refer to as the "true value" of an asset raises numerous problems which the Courts are unprepared to resolve, particularly in the rapid paced setting of a request for preliminary relief. For example, is the "true value" of an asset represented by its ten year average price? its five year? twelve month? How are the courts to factor in the effect of wide swings in commodity prices over short periods, for example, the fall of the price of oil over the past year or the precipitous decline in silver prices in 1980? The Court

It is one of the fundamental principles of a market economy that the market price of an asset represents its value. Prices fluctuate, often dramatically, as the supply of and demand for a commodity waxes and wanes. Obviously, Movants and Defendants differ as to the appropriate time to sell these assets to realize the maximum price. This Court will not disturb Defendants' business decision to foreclose simply based on Movants' speculation that the prices of the assets will later rise. Nor will this Court substitute its judgment, or that of Movants', for the decision of the market on the value of the assets in question.

Taken to its logical conclusion, the principle that Movants propose would forestall all foreclosures at precisely the times when the remedy of foreclosure is usually most needed by lenders, *i.e.*, when the market is depressed. Such a result is untenable.

■ Movants argue that foreclosure on the Collin County property will lead to the rejection of several pending zoning applications in both Richardson and Plano, Texas.[5] Affidavit of Donald Dillard, Mvts. App. 14 at 4–5. No proof is presented to support Movants' conclusion that the foreclosure will have such an effect. Even if it were

proved, however, the rejection of zoning applications and any resultant loss in increased value of the properties would not constitute irreparable harm. Should the movants later prevail on the merits, the value of the property both with and without the proposed zoning change can be determined and Movants be fully compensated.

■ Movants also contend that they would be irreparably harmed by the loss of the cash flow they receive from PRC. Affidavit of Walter Fraker, Mvts. App. 3, at 3–5. Loss of income, compensable after trial on the merits, or financial distress, are not irreparable injury.[6] *Sampson v. Murray*, 415 U.S. at 90, 94 S.Ct. at 953; *Danden*, 615 F.Supp. at 1099; *Aldrich v. Skillern & Sons*, 493 F.Supp. 1073, 1075 (N.D. Tex.1980); *Mobil Oil Corp. v. United States Department of Energy*, 659 F.2d 150, 153 (Temp.Emer.Ct.App.1981), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981); *EEOC v. City of Janesville*, 630 F.2d 1254, 1259 (7th Cir. 1980).

■ Movants' allegation that they will be forced to sell oil at "potentially lower prices" if the PRC assets are foreclosed

---

doubts that it could produce an estimate of "true value" more accurate than that of the market.

5. Movants have argued in their brief that real estate is unique and that foreclosure on each piece of real estate is therefore presumptively irreparable injury, citing *Greater Houston Bank v. Conte*, 641 S.W.2d 407, 410 (Tex.App.—Houston [14th Dist.] 1982, no writ). As a precedent against real estate foreclosure, this case is chiefly notable for its lack of cited ancestry. Both the Texas and federal courts have denied preliminary relief to halt foreclosure of real estate without mention of any such presumption. *See, e.g., Mussina v. Morton*, 657 S.W.2d 871 (Tex. App. 1 Dist.1983, no writ); *McCachren v. United States Department of Agriculture, Farmers Home Administration*, 599 F.2d 655 (5th Cir.1979). Further, the Court finds no authority that supports such a presumption of irreparable injury. To the contrary, the Fifth Circuit precedents are clear that each element must be demonstrated in each case. *See, e.g., Spiegel v. City of Houston*, 636 F.2d 997, 1001 (5th Cir.1981), *reh. den.*, 641 F.2d 879.

6. Movants rely upon *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975) for the claim that lost business constitutes irreparable injury. This reflects a misreading of *Doran*. There the Supreme Court found that the question of whether the preliminary relief should issue was "a close one", *id.* at 932, 95 S.Ct. at 2568, and upheld the district court's determination that on the facts of that case a sufficient showing had been made. Here not only are *Doran*'s important constitutional questions not present, but the Court finds that Movants have not shown any loss of business comparable to that in *Doran* where the defendants' conduct would clearly have closed the businesses in question. *Florida Businessmen v. City of Hollywood*, 648 F.2d 956, 958 n. 2 (5th Cir.1981), on which Plaintiffs also rely, similarly states "[a] substantial loss of business *may* amount to irreparable injury *if the amount of lost profits is difficult or impossible to calculate....*" (emphasis added). Movants have not shown any such difficulty here, indeed their affidavits reflect that they have already calculated the value of many of the injuries they fear.

upon, Fraker Affidavit, Mvts.App. 3, at 5, again simply does not constitute an irreparable injury. Damages for any such sales can be calculated, and Movants fully compensated, should they prevail on the merits.

With respect to the Placid asset foreclosures, Movants contend that the foreclosures could trigger a decision by the Netherlands to seize Placid's North Sea oil concessions without compensation, as provided by Dutch law. Again, no proof supports Movants' conclusion that foreclosure of a portion of Placid's assets would have such an effect. (Indeed, it could just as well be argued that the events of Movants' defaults on their obligations to the banks may trigger just such a seizure.) In any event, such speculation is not sufficient to support a finding of an irreparable injury. *Morgan*, 518 F.2d at 240. Nor is the mere risk of harm irreparable injury. *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir.1980). There must be a present threat of substantial, noncompensable harm. *Spiegel v. City of Houston*, 636 F.2d 997, 1001 (5th Cir.1981), *reh. den.*, 641 F.2d 879. Furthermore, there is no evidence that the loss of the North Sea concession would itself be irreparable; money damages would still be available to compensate Placid for any loss as in *Danden, supra*.

Finally, Movants have presented an affidavit concluding that the foreclosure sale of even a single drilling rig owned by Penrod would result in an irreparable loss of customer confidence. Affidavit of Marshall Ballard, Mvts.App. 2 at 4. This is wholly conjectural; no drilling rigs have been posted for foreclosure, however, and so this argument need not be addressed in detail.

In sum, Movants have catalogued extensive injuries they believe will result from the foreclosures. None of these meets the requirements of this Circuit for an injury to be considered irreparable. Movants have an adequate remedy at law for these alleged injuries and are therefore not entitled to injunctive relief.

*Likelihood of Success on the Merits*

Each of Movants' substantive claims present difficult legal and factual issues. The antitrust claims are vigorously factually controverted by Defendants. *See, e.g.*, Affidavits of Eben Jones, Defendants' Exhibit, at 2, and James Hansen, Defendants' Exhibit, at 6–8.

In addition, Movants' antitrust claims are not valid defenses to their obligations under the loan agreements.[7] *Kelly v. Kosuga*, 358 U.S. 516, 520–21, 79 S.Ct. 429, 431–32, 3 L.Ed.2d 475 (1959); *Response of Carolina v. Leasco Response, Inc.*, 498 F.2d 314, 318–20 (5th Cir.), *cert. denied*, 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645 (1974). The Court finds that Movants have not made the requisite showing that the loan agreements are tainted by the alleged antitrust violation.

Movants' other claims face difficult hurdles on grounds including the application of *Town North National Bank v. Broaddus*, 569 S.W.2d 489 (Tex.1978) to the fraud claims; the parol evidence rule, *e.g.*, *Harville Rose Service v. Kellogg Co.*, 448 F.2d 1346 (5th Cir.1971), *cert. denied*, 405 U.S. 987, 92 S.Ct. 1248, 31 L.Ed.2d 453 (1972) on the breach of contract claims; and the application of *English v. Fischer*, 660 S.W.2d 521 (Tex.1983) to the bad faith claims. Further, for the Court to find a substantial likelihood of success on the merits with respect to Movants' claims for wrongful domination[8] and control and economic duress would require the Court to determine Movants acted with a degree of naivete which is belied by their own affidavits.

---

**7.** As the owners of the Collin County real estate are not parties to the antitrust case, CA-3-86-2012-H, the antitrust claims are not applicable to the foreclosure on that asset.

**8.** Movants rely on *State National Bank of El Paso v. Farah Manufacturing Company, Inc.*, 678

S.W.2d 661 (Tex.App. 4 Dist.1984, writ dism'd) for the legal basis for the wrongful domination claims. The Court notes that the Court in that case awarded damages as a remedy and not injunctive relief.

Having reviewed the affidavits of both parties and the representations of counsel, and assuming for purposes of this opinion that the restructuring of the loan agreements in question is the issue against which the likelihood of success should be measured, the Court cannot say at this early stage that there is a likelihood of success on the merits sufficient to restrain foreclosure of collateral for an admitted indebtedness.

### Balancing the Equities

Movants allege that the harm to them outweighs the harm to the banks because the banks would only be deprived of collateral. Movants speculate that loss of these assets will inevitably lead to "liquidation" of Placid and Penrod. Both Movants and the banks agree that the collateral is declining in value. *See, e.g.,* Affidavit of Dolores R. Rogers, Defendants Exhibit, at 4–5; Clarke Affidavit, Mvts.App. 9, at 4; Affidavit of Everette Truly, Mvts.App. 11, at 2; Brown Affidavit, Mvts.App. 12, at 3–4. The banks contend that restraining foreclosure will prejudice them as the declining value of the collateral reduces their chances of repayment. The Court cannot say that depriving the borrower of assets knowingly pledged for an admitted debt, balanced against the harm to the lender in light of the steadily decreasing value of the assets as collateral, weighs the equities in favor of Movants.

### Public Interest

Even in a private commercial dispute, the Court must consider the public interest which may be in jeopardy. *Mississippi Power & Light,* 760 F.2d at 625. Movants have presented affidavits, which the Court deems conclusory, alleging that denial of a TRO will harm the public interest through reduced oil and gas production, Affidavit of Phillip Clarke, Mvts.App. 6, at 4, and loss of jobs. Affidavit of John McMullen, Mvts. App. 1, at 3. Such broad, sweeping state-

ments "have no relevance as a separate factor in determining whether an interlocutory order is appropriate." [9] *Continental Group,* 614 F.2d at 358. Generalities will not support a determination that the public interest would be served by granting the TRO.

### Conclusion

 Movants have failed to carry their burden under the four factor test for granting preliminary relief. The Motion for a Temporary Restraining Order should therefore be, and is hereby, DENIED.

SO ORDERED.

---

9. Defendants' discussion of the public interest contains similar sweeping statements on the impact of this case on the national banking sys-

tem. *See, e.g.,* Memorandum of Authorities of the 21 Banks, at 3.