BANNUM, INC. et al., Plaintiffs,

v.

CITY OF FORT LAUDERDALE, FLORIDA, et al., Defendants.

No. 86–6926–CIV–EPS.

United States District Court,
S.D. Florida,
Miami Division.

Dec. 4, 1986.

Scott Wendelsdorf, Marvin R. O'Koon, Louisville, Ky., Frank Amigo, Plantation, Fla., for plaintiffs.

Robert H. Schwartz, Ft. Lauderdale, Fla., for defendants.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

SPELLMAN, District Judge.

This CAUSE came before the Court on Plaintiffs' motion for preliminary injunction. This Court heard an emergency motion for a temporary restraining order on November 20, 1986, where this Court informed the Plaintiffs that without evidence showing that they had a substantial likelihood of succeeding on the merits, this Court was inclined to deny the motion. Because the Plaintiff was unable to make such a showing at the hearing, this Court granted the Plaintiff an opportunity to provide affidavits showing the injury that it has suffered and its potential for redressibility should the case proceed to trial. After reviewing these materials and the Plaintiffs' restyled motion for preliminary injunction, this Court is still of the opinion that the Plaintiff is unable at this time, nor is the situation likely to improve at trial, to satisfy the four fundamental elements enunciated in *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974) for the granting of a preliminary injunction. It is hereby

ORDERED AND ADJUDGED that the motion for a preliminary injunction is DENIED. This Court, however, in order to provide maximum protection to the interests the Plaintiffs may legitimately have in the disputed property site, will accelerate

the case on the merits for final review and schedule trial within 60 days from the filing of the answer.

## FACTUAL BACKGROUND

Although the case came to this Court under emergency circumstances, it was certainly not one in which its emotive impact upon the Court, the parties and the citizens of Fort Lauderdale went unnoticed. The Plaintiffs' contract with the Department of Justice and its Bureau of Prisons for the creation of residential facilities that supervise persons in custody who are at the twilight of their prison sentences and whom the Department has determined to be low risk, nonviolent individuals. In essence, the Plaintiffs have located around the country, renting apartment facilities in residential communities that act as halfway homes between the prison and the outside world. The Plaintiffs arrange for the residents to seek employment during the workday while returning to the facility at night, remaining there until the next day. The residential centers also provide counseling services for those in its care.

The Plaintiffs have attempted to gain zoning permission for the operation of one of their facilities in Fort Lauderdale, Florida. Originally the Plaintiffs contracted with the Areca Palms Motel in Fort Lauderdale, Florida, and remained there for one year until the Department of Justice, fearing the repercussions from local government due to the political maneuverings of neighborhood groups, requested that the Plaintiffs abandon their operations at the motel, move the residents out, and seek an alternative site in the City of Fort Lauderdale that would meet the approval of the local zoning board. Despite repeated attempts to gain such approval for a new site located in an area where there are multifamily residences as part of a general neighborhood zoning plan, the City has been unwilling to grant such a use permit, and instead has classified these centers as "custodial facilities" and as "residential rehabilitation centers."

Plaintiff seeks this preliminary injunction because the Justice Department has recently expressed some insecurity about the ability of the Plaintiff to accomplish the stated purposes of their agreement. The Government now seemingly lacks confidence in the Plaintiffs' ability to go forward with the housing and supervision of affected residents. The Bureau of Prisons sent the Plaintiffs a "cure notice," a fairly routine matter when a vendor under contract with the government is in jeopardy of breach. Before responding, the Plaintiffs sought equitable relief in asking this Court to require the City of Fort Lauderdale to allow the project to remain in the disputed area, thereby, giving the Bureau of Prisons the proper assurances that the Plaintiffs would fulfill their contractual obligations.

## LEGAL CONCLUSIONS MILITATING AGAINST THE USE OF EQUITABLE RELIEF IN THIS CASE

Plaintiffs have raised several constitutional challenges pursuant to 42 U.S.C. § 1983, arguing that the City's reluctance to grant a use permit for their facility has denied the Plaintiffs valuable civil rights in contravention of existing law. Because this motion is not really concerned with the merits of this case, but rather with whether the Plaintiffs are entitled to injunctive relief, this Court will first address the difficulties that the Plaintiffs have had in meeting the requirements of the *Canal Authority* criteria. *See Sierra On-Line, Inc. v. Phoenix Software*, 739 F.2d 1415, 1422 (9th Cir.1984).

■ The Plaintiffs are aware that equitable remedies such as injunctive relief are not liberally granted, but are rather saved for those extraordinary circumstances when drastic relief is necessary to preserve the status quo. *Cate v. Oldham*, 707 F.2d 1176 (11th Cir.1983); *Baker v. School Bd. of Marion*, 487 F.Supp. 380, 382 (M.D. Fla.1980); *Schrank v. Bliss*, 412 F.Supp. 28, 34 (M.D.Fla.1976). Indeed, courts normally should not interfere with the relative positions of the parties unless, as a threshold matter, the relief sought is attempting to preserve the status quo. *Smith Intern, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1578 (Fed.Cir.), *cert. denied*, 464 U.S. 996,

104 S.Ct. 493, 78 L.Ed.2d 687 (1983); *Louis v. Meissner,* 530 F.Supp. 924, 925–26 (S.D. Fla.1981).

▆ The Plaintiffs in this case cannot even satisfy the first level of inquiry that a court must conduct before taking a closer look at the elements necessary to establish a preliminary injunction. If the Plaintiffs had chosen not to abandon the Areca Palms Motel and instead held their ground with residents intact, this Court may have decided this motion differently. As far as this Court can determine, there is no status quo that a court exercising its equitable powers can even seek to preserve. At least in the Areca Palms Motel situation, the Plaintiffs had an existing lease with the motel and the residents were in place without incident for over one year. A zoning problem under these circumstances would of necessity force a court to consider whether equity requires that the residents remain in the motel and allow for the continued enforcement of the lease until a court can reach a final resolution on the merits.

No such condition exists under these facts, however. The Plaintiffs were not under a lease, but were still in the process of negotiating its signing pending zoning approval. Furthermore, and more importantly, there were no residents at the affected property site, so that this Court is not concerned with the displacement of indigent or otherwise homeless people. The Plaintiffs obviously believe that equitable remedies contemplate more than just the preservation of the status quo, but should also extend to more extreme forms of affirmative relief. In this case there is no status quo to preserve, only the Plaintiffs' hope that this Court will force the City of Fort Lauderdale to grant a use permit for this project, and in doing so, place the insecurities of the Bureau of Prisons at ease. Nowhere can this Court find such authority to interfere with a city's legitimate zoning decisions. This is particularly true in a case such as this where the decision to ignore the nonconforming use of the property is consistent with the land use planning and urban design considerations of the City. *See, e.g., Christy v. City of Ann Arbor,* 625 F.Supp. 960 (E.D.Mich. 1986) (upholding the enforcement of a city zoning ordinance preventing the operation of an adult bookstore).

It is really unnecessary for this Court to proceed further in this analysis. Still, for the sake of argument, this Court finds that the Plaintiffs are in any event unable to satisfy any of the elements of the *Canal Authority* test for the granting of a preliminary injunction. The four prerequisites are: (1) a substantial likelihood that Plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest. *Canal Authority of State of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974) (citations omitted); *accord Shatel Corp. v. Mao Ta Lumber and Yacht Corp.,* 697 F.2d 1352, 1354–55 (11th Cir.1983).

The Plaintiffs have not presented this Court with any convincing evidence that would suggest that they have a "substantial likelihood" of prevailing on the merits. The Plaintiffs present equal protection and due process claims, but these circumstances are clearly factually dissimilar from those authorities on which the Plaintiffs rely. For example, reliance on *Espanola Way Corp. v. Meyerson,* 690 F.2d 827 (11th Cir.1982) is misplaced. That case involves a property owner with residents firmly entrenched in the facility. Even if the Plaintiffs can prove that the level of harassment in this case approached that which the court found objectionable in *Espanola Way,* there still is the problem of showing that this similarity alone is enough to warrant equitable relief at this time in light of the failure of the Plaintiff to present this Court with a status quo to preserve.

Furthermore, although Plaintiff relies on *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973) and *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)

for the proposition that the City of Fort Lauderdale, in discriminating between otherwise similar uses of the property, has created arbitrary and unlawful categories in violation of the equal protection clause, there is no guarantee that this theory, although compelling, has a substantial likelihood of succeeding should this case proceed to trial. The Plaintiffs' affidavits have not shown blatant, irrational or arbitrary conduct that is constitutionally suspect. Indeed, although the ex-offender status of the residents may be an objectionable category for equal protection purposes, it may also be the case that the Defendants will be able to show that the zoning restriction is rationally based, and that the citizens of the City of Fort Lauderdale have a legitimate interest in keeping partially incarcerated persons off neighborhood streets. In fact, this is a likely outcome, because the classification here, unlike in *City of Cleburne* where the city distinguished between retarded and nonretarded citizens, "is not so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne*, 473 U.S. at 446, 105 S.Ct. at 3258 (citations omitted).

██ This Court is equally unmoved by the Plaintiffs' claim to have suffered irreparable injury. The general rule forces a plaintiff seeking injunctive relief to show that there is no adequate remedy at law that would compensate the injured party for the loss incurred. *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir.1983); *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir.1981). Without the ability to show that the Plaintiffs' injury cannot be undone through monetary remedies, this Court is unable to make a finding of irreparable harm. Under the facts presented, however, this case is particularly inappropriate for equitable relief. Assuming that the Plaintiffs' constitutional claims have greater substance than appears at this time, there will be a perfect opportunity at trial to seek monetary relief for any loss occasioned by the City of Fort Lauderdale's conduct that resulted in the termination of the Plaintiffs' contractual arrangement with the Bureau of Prisons. Once again, without the presence of a status quo that a court would ordinarily be asked to preserve, and realizing that the Plaintiffs have an adequate remedy at law should they prove their claim at trial, this Court is highly resistent to grant affirmative relief under these facts.

In a peculiar way, the Plaintiffs' claim is in truth based on an interference with contract theory, conveniently disguised in constitutional garb. Plaintiffs' real problem is not with the City of Fort Lauderdale, but rather with the federal government. It is difficult for this Court to believe that the Bureau of Prisons will lose confidence in the ability of the Plaintiffs to perform nationwide simply because one city was particularly resistant to place a facility in a residential neighborhood. Proving such a claim may be difficult enough, but once proven, the damages resulting from the termination of this government contract is both ascertainable and cognizable under existing law. *Cf. United Technologies v. Washington County Bd.*, 624 F.Supp. 185 (D.Minn.1985).

In balancing the harms that at least one of the parties is likely to suffer once a court rules on a motion for injunctive relief, this Court is mindful that the public interest in denying the motion is substantial in a case such as this, where a neighborhood is asked to house a "quasi-prison" in an area not zoned for this purpose, nor interested in testing its usefulness. Although the Plaintiffs are in fact carrying out the public policy and efficiency saving goals of the Justice Department, this Court is unable to conclude that this factor heavily outweighs the at least equally compelling interests shared by the citizens of Fort Lauderdale. Similarly, in balancing the harms that are attendant to any decision that this Court now reaches, the Plaintiffs' potential contractual damages are not so obviously greater than the harm that *may* come to the safety of Fort Lauderdale neighborhoods and the quality of its land use planning decisions.